**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

JACK CLARK,

    Defendant.

:      Case No. 3:99-cr-86
    (Civil Case No. 3:10-cv-406)

:      District Judge Walter H. Rice
    Magistrate Judge Michael J. Newman

:

## REPORT AND RECOMMENDATION[1]

This case is before the Court on Defendant's Motion to Vacate Sentence pursuant to 28 U.S.C. § 2255.[2] Defendant asserts two grounds for relief:

I. Appellate counsel rendered ineffective assistance of counsel by failing to provide the United States Court of Appeals for the Sixth Circuit with relevant copies of work product seized by the Government from Jack Clark's jail cell, by failing to make any particularized assertion of prejudice based upon the work product, by failing to challenge the district court's finding of fact, and by failing to recognize that such findings were findings of fact.

II. The outrageous Government misconduct of intimidating witnesses requires that the conviction of Jack Clark be overturned, in accordance with the Due Process Clause of the Fifth Amendment to the Constitution of the United States.

Doc. 1187-3 at PageID 4561, 4596 (capitalization altered). The United States answered the Motion

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

[2] Defendant filed this § 2255 Motion with the assistance of counsel. However, the Court permitted his attorney to withdraw on September 9, 2011. Doc. 1219.

-1-

(doc. 1200) and Defendant filed a *pro se* Reply to the United States' Answer (doc. 1239).[3]

## I. Procedural History

Defendant and ten others were charged with various federal offenses related to cocaine trafficking. Doc. 13. Defendant was specifically charged with the following offenses: (1) conspiracy to distribute, and possess with intent to distribute, more than five kilograms of cocaine; (2) money laundering in connection with the purchase of real property; (3) interstate travel in aid of a racketeering enterprise; (4) attempting to possess seven kilograms of cocaine; (5) using a firearm during, and in relation to, a drug trafficking crime; and (6) money laundering in connection with the purchase of an automobile. *Id.*

A jury convicted Defendant on all counts in November 2002.[4] Doc. 777. On May 3, 2005, this Court sentenced Defendant to a total of 480 months imprisonment. Doc. 1041.

---

[3]After his counsel withdrew, Defendant filed a "Supplemental Brief" in support of his § 2255 Motion. Doc. 1235. He also filed a *pro se* Reply to the Answer of the United States. Doc. 1239. To the extent that these supplemental pleadings raise new claims for relief that do not relate back to the original § 2255 Motion, *i.e.,* they "differ in both time and type from those the original pleading set forth," those claims are barred by the statute of limitations. *See Howard v. United States*, 533 F.3d 472, 475-76 (6th Cir. 2008); *see also Mayle v. Felix*, 545 U.S. 644, 649-50 (2005). The one-year statute of limitations for § 2255 Motions begins to run on "the date on which the judgment of conviction becomes final." *Sanchez-Castellano v. United States*, 358 F.3d 424, 426 (6th Cir. 2004). In this case, Defendant's limitations period began to run on October 5, 2009 -- the date the U.S. Supreme Court denied him *certiorari*. *Clark*, *infra*, 130 S. Ct. at 345; *see Johnson v. United States*, 246 F.3d 655, 657 (6th Cir. 2001). Thus, the limitations period expired on or about October 5, 2010. Defendant did not file these supplemental pleadings until October 2011. *See* docs. 1235, 1239. In his supplemental filings, Defendant argues that the attorney who filed his § 2255 Motion was ineffective. *See* docs. 1235, 1239, 1241. Defendant, however, does not have a Sixth Amendment right to counsel with respect to his § 2255 Motion proceedings. *See Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987); *Brown v. United States*, 20 F. App'x 373, 375 (6th Cir. 2001). The Court has carefully reviewed Defendant's *pro se* Supplemental Brief (doc. 1235), as well his *pro se* Reply (doc. 1239). Defendant essentially maintains the same claims as those brought in his original § 2255 Motion, *albeit* with more factual elaboration. These *pro se* supplemental filings do not change the Court's decision -- that Defendant's § 2255 Motion should be denied.

[4]Defendant was tried together with another defendant, Danny Nixon. Doc. 1154 at PageID 3099.

-2-

With the assistance of counsel, Defendant appealed to the Sixth Circuit Court of Appeals, raising five issues for review. *See* doc. 1242-1 at PageID 5020-23, 5029. For purposes of this § 2255 Motion, only two issues are relevant:

> Whether a criminal defendant's Fifth and Sixth Amendment rights are violated when the Government, without a warrant, seizes the defendant's legal papers, provides them to the FBI Agent investigating his case, who discusses the papers with the lead prosecutor; takes no step to safeguard the documents or ensure their timely return; and does not notify defense counsel or the Court.
>
> Whether a defendant's Due Process rights are violated when the Government induces witnesses to testify against the defendant by threatening them with prosecution – without a good-faith basis for doing so.

Doc. 1242-1 at PageID 5029. On April 2, 2009, the Sixth Circuit affirmed Defendant's conviction and sentence. *United States v. Clark*, 319 F. App'x 395 (6th Cir. 2009).

On August 25, 2009, Defendant filed a petition for a writ of *certiorari* in the United States Supreme Court. Doc. 1163. The Court denied his petition on October 15, 2009. *Clark v. United States*, __ U.S. __, 130 S. Ct. 345 (2009). Defendant filed this § 2255 Motion on October 5, 2010.[5]

## II. ANALYSIS

### A. Standard of Review

To obtain *habeas* relief under 28 U.S.C. § 2255, a federal prisoner must "demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea or the jury's verdict," or "a fundamental defect which inherently results in a complete miscarriage of justice." *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003). The burden on collateral review under § 2255 is "significantly higher" than on direct appeal. *Fair v. United States*, 157 F.3d 427, 430 (6th Cir. 1998).

---

[5] Defendant had previously filed a *pro se* "motion for re-sentencing and for the Court to appoint me an attorney to do my 2255." Doc. 1171. Because Defendant did not want that document to be construed as a § 2255 Motion, *see* doc. 1177, the Motion was dismissed without prejudice. Docs. 1179, 1181.

### B. Ground One

In his first claim for relief, Defendant asserts that he was denied the effective assistance of appellate counsel as guaranteed by the Sixth Amendment. Doc. 1187-3 at PageID 4561-95. According to Defendant, the following conduct by his appellate counsel constituted deficient performance: (1) not providing the Sixth Circuit Court of Appeals with copies of his documents that were seized by the Government; (2) not challenging this Court's factual findings; and (3) failing to make a particularized assertion of prejudice based upon the Government's seizure of his documents. *See id.*

#### 1. Facts Regarding the Government's Seizure of Defendant's Papers

The Court will first summarize the relevant, undisputed facts concerning the Government's seizure of Defendant's papers. *See* doc. 1187-3 at PageID 4561-65; doc. 1200 at PageID 4744-49. While Defendant was incarcerated in the Montgomery County, Ohio jail, officials discovered that some of the inmates were planning an escape. *See id.* As a result, on May 25, 2000, Defendant was moved to the Clark County, Ohio jail. *See id.* During the move, FBI agents, without a warrant, seized Defendant's property, which included a box of 811 pages containing his handwritten notes. *See id.* The FBI initially inspected Defendant's papers for evidence of his involvement in the planned escape, but did not find any such evidence. *See id.* However, the FBI agents believed some of Defendant's notes indicated that he was intimidating witnesses and/or suborning perjury with respect to his pending criminal charges. *See id.* The agents thus gave the papers to the FBI case agent, Thomas Mygrants, who -- apparently pursuant to the directive of Assistant United States Attorney Margaret Quinn's (" Quinn") but without a warrant -- further reviewed the notes for evidence of witness intimidation and subornation of perjury. *See id.*

Though Mygrants did not find any such evidence, he still used the notes during his investigation. *See id.* Mygrants contacted some of the Government's anticipated witnesses to inquire whether they had been threatened by Defendant or his family members. *See id.* Mygrants also reported his findings -- from his review of Defendant's notes -- to Quinn. *See id.* In addition, Mygrants shared some of the telephone numbers in the notes with another investigator, John Brun, who was in charge of the pen registers in Defendant's case. *See id.*

On June 21, 2000, after learning that the Government was in possession of Defendant's papers, this Court ordered that the papers be returned to Defendant. Doc. 256. The Government, in compliance with this Court's Order, returned Defendant's papers to him and destroyed all copies. *See* doc. 460 at 79-83. Defendant contends that some of his papers were nonetheless never returned to him. *See* doc. 1187-3 at PageID 4563-64. Mygrants testified that he did not destroy any of the original documents, and returned all of Defendant's papers to him. *See* doc. 460 at 83-84.

Defendant then filed a motion to dismiss his indictment and/or remove Mygrants and Quinn from his case, asserting violations of his Fourth and Sixth Amendment rights. Doc. 274. Following several days of evidentiary hearings, this Court denied Defendant's motion on October 2, 2002. Doc. 705. First, this Court determined that the federal agents violated Defendant's Fourth Amendment rights when, without a warrant, they examined his papers for evidence of intimidating witnesses and suborning perjury. *Id.* at 13. However, this Court did not grant Defendant the remedies he requested for the Fourth Amendment violation, *i.e.,* dismissing his prosecution, or prohibiting Mygrants or Quinn from participating in his prosecution.[6] *Id.* at 13-15. Second,

---

[6]Instead, the Court noted that the appropriate remedy would be to suppress any evidence obtained as a result of the Government's review of his papers. *See* doc. 705 at 13. The Court noted that, should the Government seek to introduce evidence obtained from Defendant's papers, the Court will determine whether such evidence must be suppressed at that time. *See id.* at 15. Defendant does not allege that this issue ever arose at trial.

assuming that the Government's conduct violated Defendant's Sixth Amendment right to counsel, the Court nonetheless concluded that Defendant was not entitled to his requested relief, *i.e.,* dismissal of the indictment, because Defendant failed to demonstrate how he was prejudiced as a result of the Government reading his papers. *Id.* at 21-23. The Court, having conducted an *in camera* review of the 811 pages, stated as follows:

> In sum, the *in camera* review fails to cause the Court to find that the Government could have obtained an advantage by reading Clark's papers. Those papers do not reveal the theory of his defense, other than the generic defense that he is an innocent man who is being persecuted by gangsters, masquerading as law enforcement officers, who have recruited every lying, East Dayton 'crack head' to testy against him. In addition, the Government has not retained any of Clark's papers for use at trial; therefore, the type of prejudice suffered by the petitioner in *Bishop* will not befall Clark. Based upon the testimony of the Government's agents, this Court finds that they did not gain knowledge of Clark's communications with his counsel, work product or the theory of his defense, as a result of their review of his papers. All agents testified that they did not remember seeing such documents.

*Id.* at 22-23. Accordingly, the Court denied Defendant's motion to dismiss and for other appropriate sanctions on October 2, 2002. *Id.* at 23.

### 2. Ineffective Assistance of Counsel Standard

A criminal defendant has a Sixth Amendment right to effective assistance of counsel on direct appeal. *Evitts v. Lucey*, 469 U.S. 387, 388-89 (1985). To show that his appellate counsel rendered ineffective assistance, Defendant must meet the two-part *Strickland v. Washington* test by demonstrating that (1) his counsel's performance was deficient, and (2) he was prejudiced as a result. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Because there is "a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance," to meet the deficiency prong, Defendant must demonstrate that counsel's performance "fell below an objective standard of reasonableness." *Id.* at 688-90. To satisfy the prejudice prong, "[D]efendant must show

that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Further, with respect to ineffective assistance of appellate counsel claims, Defendant must show that "there is a reasonable probability that inclusion of the issue would have changed the result of the appeal." *McFarland v. Yukins*, 356 F.3d 688, 699 (6th Cir. 2004).

### 3. Failure to File Defendant's Papers in the Sixth Circuit

Defendant's first sub-claim is that his appellate counsel was deficient for not filing copies of his notes -- which, he argues, contained communications with his counsel and work product -- with the Sixth Circuit on appeal. *See* doc. 1187-3 at PageID 4571-74. In support of this claim, Defendant cites to cases in which the attorney failed to file relevant transcripts on appeal in state court. *See id.* In contrast to those cases, where the missing record/transcript was not available to the reviewing court, however, Defendant's papers were available to the Sixth Circuit Court of Appeals. The record on appeal from a District Court to the Sixth Circuit includes all papers and exhibits filed in the District Court, and the Sixth Circuit electronically accesses that record. Fed. R. App. P. 10(a); 6 Cir. I.O.P. 11. Defendant's 811 papers were filed with this Court under seal, and thus available to the Sixth Circuit for review on appeal. Doc. 475. Therefore, Defendant's argument -- that his counsel was ineffective for not filing copies of the 811 pages at issue -- is factually unsupported and lacks merit.

### 4. Failure to Challenge the District Court's Factual Findings

In his second sub-claim, Defendant argues that his appellate counsel rendered ineffective assistance by not challenging this Court's factual findings about the contents of the 811 pages of notes. *See* doc. 1187-3 at PageID 4566-68, 4573-74. Instead, his counsel solely contested this

Court's finding regarding the significance of those documents -- *i.e.,* whether they contained work product -- which he argued, was a mixed question of law and fact that required *de novo* review. *Id.*

Having carefully reviewed the appellate brief filed by Defendant's counsel in the Sixth Circuit, the Court finds that his appellate counsel effectively argued that the Government violated Defendant's Sixth Amendment rights. Doc. 1242-1. The brief devotes thirteen pages to this argument.[7] *Id.* at PageID 5066-78. First, his counsel asserted that Defendant's papers -- containing notes made in preparation for an attorney-client meeting -- were protected under the Sixth Amendment, and that it was a violation of the Sixth Amendment to communicate the protected information to the prosecution. *Id.* at PageID 5067-69. Second, citing relevant case law, counsel argued that, given those facts, Defendant automatically suffered prejudice, and the District Court erred by requiring him to make a specific showing of prejudice. *Id.* at PageID 5069-73. Third, he contended that, even if prejudice was not automatically assumed, Defendant still established prejudice, as the notes contained Defendant's trial strategy and Mygrants admitted that he contacted potential witnesses based on his review of the notes. *Id.* at PageID 5073-76. Finally, counsel argued that Defendant was entitled to a dismissal of the indictment based on the Sixth Amendment violation. *Id.* at PageID 5076-78.

At oral argument before the Sixth Circuit, appellate counsel further effectively and zealously advocated on Defendant's behalf. While he did not challenge this Court's factual findings, he contended that this Court's holding was legally incorrect. *See* doc. 1187-4. He asserted that Defendant was prejudiced by the prosecution's access to his notes containing legal strategy, even

---

[7]Defendant's appellate counsel also persuasively set out the underlying facts to support a Sixth Amendment violation. *See* doc. 1242-1 at PageID 5034-43.

taking this Court's factual findings as true. *See id.* In doing so, Defendant's appellate counsel was attempting to persuade the Sixth Circuit panel that the issue before it was a mixed question of law and fact. *See id.* This was an effective appellate strategy. The Sixth Circuit's standard of review was as follows: "[T]he district court's factual findings are reviewed for clear error, but its determination whether the facts make out a violation of constitutional rights is reviewed *de novo*." *Clark*, 319 F. App'x at 399 (citing *United States v. O'Dell*, 247 F.3d 655, 666 (6th Cir. 2001)). Thus, Petitioner's counsel was advocating for the Sixth Circuit to apply the more favorable *de novo* standard, and the Court did so.

An appellate counsel's ability to choose those arguments that are more likely to succeed is "the hallmark of effective appellate advocacy." *Matthews v. Parker*, 651 F.3d 489, 523 (6th Cir. 2011) (quoting *Caver v. Straub*, 349 F.3d 340, 348 (6th Cir. 2003)). Accordingly, it is difficult to show that appellate counsel was deficient for raising one issue, rather than another, on appeal. *See id.* "In such cases, the petitioner must demonstrate that the issue not presented was clearly stronger than issues that counsel did present." *Id.*

Here, the Court finds that Defendant's appellate counsel reasonably and appropriately determined that his chances of success were higher if he could persuade the Sixth Circuit that the issue before it was, at least in part, a legal one requiring *de novo* review. Otherwise, he would have had to overcome the more onerous "clearly erroneous" standard, under which a court will only reverse when it has a "definite and firm conviction that a mistake has been committed." *United States v. Kellams*, 26 F.3d 646, 648 (6th Cir. 1994). Accordingly, Defendant's second sub-claim lacks merit.

### 5. Failure to Make a Particularized Assertion of Prejudice

Defendant's third sub-claim is that his appellate counsel failed to make a particularized assertion of prejudice. Doc. 1187-3 at PageID 4574-76. Essentially, Defendant believes that his appellate counsel should have pointed to specific portions of the 811 pages of notes, and explained how that content helped the prosecution and prejudiced him. *See id.* In an attempt to show that he was prejudiced, Defendant analyzes his papers, note-by-note, and speculates as to how the Government may have used the information to assist in his prosecution. *Id.* at PageID 4577-95.

Contrary to Defendant's assertions, however, his appellate counsel did argue that he was prejudiced as a result of the Government's review of his notes. Indeed, one of the subheadings in the first argument in his appellate brief was titled: "Even if Prejudice Were Not Automatic, Mr. Clark Was Sufficiently Prejudiced Here." Doc. 1242-1 at PageID 5073. Defendant's counsel pointed to Mygrants' testimony that: (1) he learned who Defendant was planning to call as a witnesses from the notes, doc. 458 at 84-85, 148-49; and (2) the notes contained information regarding Defendant's defense strategy, *see id.* at 85-86. Doc. 1242-1 at PageID 5075-76. Additionally, his counsel argued that Defendant was prejudiced because, early in the criminal proceedings, Defendant lost confidence in the protection of attorney-client communications. *See id.* at PageID 5076.

Likewise, at oral argument, Defendant's appellate counsel contended that Defendant was prejudiced by the Government's conduct. *See* doc. 1187-4. He emphasized Mygrants' testimony -- that he had contacted witnesses based on what he saw in Defendant's notes. *See id.* at PageID 4605, 4610. Additionally, his counsel reiterated that Defendant believed some of his papers were never returned to him, making the full extent of prejudice uncertain. *See id.* at PageID 4605-06, 4609-10.

Thus, the Court finds that, while it may not have been in the exact manner that Defendant wished, appellate counsel effectively argued that Defendant was prejudiced by a Sixth Amendment violation. His counsel reasonably decided to argue prejudice based on Mygrants' testimony, rather than attempting to translate the meaning of Defendant's "cryptic" notes -- containing shorthand, abbreviations, "street" names, and slang -- to the Sixth Circuit Court of Appeals. *See* doc. 1187-3 at PageID 4574.

Finally, the Court has carefully reviewed Defendant's analysis of his notes as set forth in his § 2255 Motion. *See* doc. 1187-3 at PageID 4576-95. Even with the meaning of specific portions of the notes clarified, the Court still finds that Defendant has failed to demonstrate the required prejudice to establish a Sixth Amendment violation. Defendant merely speculates as to how the Government may have used this information to prosecute him. He has not given any specific examples of how the Government used privileged information at trial, contrary to the facts in *Bishop v. Rose*, 701 F.2d 1150, 1156-57 (6th Cir. 1983).[8]

In sum, Petitioner's appellate counsel effectively represented him, and Ground One should be dismissed.

### C. Ground Two

In Ground Two, Defendant asserts that he was denied a fair trial in violation of the Due Process Clause of the Fifth Amendment based on the Government's misconduct and intimidation of witnesses. *See* doc. 1187-3 at PageID 4782-88. Defendant attaches statements from seven

---

[8]In *Bishop*, a *habeas corpus* proceeding, the Government illegally seized the Petitioner's papers -- which included a chronology of his actions during the time he was accused of committing the offense, which he drafted for his attorney -- from his jail cell while he was awaiting his criminal trial. *Bishop*, 701 F.3d at 1151-53. The chronology was later given to the prosecution. *Id.* The Sixth Circuit held that the Petitioner had demonstrated the required prejudice to support a Sixth Amendment violation because the Government was allowed to use the chronology to impeach the Petitioner during his cross-examination. *Id.* at 1156-57.

individuals -- Jimmy Smith, Diana Dixon, John Messler, Douglas Wells, Tommy Barnett, Andrea Yost and Deborah Clark -- who claim that, due to witness intimidation by federal agents, they did not testify at trial in Defendant's favor. *See* doc. 1187-6.

### 1. To the Extent Defendant Was Aware of These Government Intimidation Claims at Trial, He Has Waived Them

As the United States correctly asserts in its Answer, Ground Two should be dismissed, at least in part, because Defendant already had an opportunity to present these claims. *See* doc. 1200 at PageID 4782-85. "[A] prior opportunity for full and fair litigation is normally dispositive of a federal prisoner's *habeas* claim." *Withrow v. Williams*, 507 U.S. 680, 721 (1993). Thus, absent manifest injustice or special circumstances, § 2255 Motions will be dismissed if they raise claims that were, or might have been, asserted on direct appeal. *Jones v. United States*, 178 F.3d 790, 796 (6th Cir. 1999).

Defendant, throughout his criminal proceedings, claimed that the Government intimidated witnesses. In fact, this Court held several days of evidentiary hearings before trial specifically to resolve these claims. Docs. 735-38. This Court also left the matter open during trial and considered the testimony of the Government witnesses on cross-examination. *See* doc. 734 at 11. On November 22, 2002, the Court orally denied Defendant's motion to dismiss his indictment due to Governmental misconduct. Doc. 886 at 69-71. The Court concluded that, not only had the Government not committed misconduct, but Defendant had not shown the required prejudice. *Id.*

On appeal, the Sixth Circuit likewise rejected Defendant's witness intimidation claims. *Clark*, 319 F. App'x at 404-05. It rejected Defendant's argument -- that the Government's efforts to induce witnesses to testify in exchange for lenient treatment constitutes Governmental misconduct. *Id.* Further, the Sixth Circuit concluded that Defendant had not shown any prejudice

-12-

as a result of the alleged witness intimidation. *Id.*

"It is well-settled law that failure to raise an argument at trial or on direct appeal is waived on collateral review under § 2255, absent a showing of both cause and actual prejudice." *Murr v. United States*, 200 F.3d 895, 900 (6th Cir. 2000); *see also United States v. Frady*, 456 U.S. 152, 167-68 (1982). As the United States asserts in its Answer, it appears -- based on Defendant's own interpretation of his notes -- that he was aware of many of the witness intimidation claims he now raises, yet he failed to develop those claims during his criminal proceedings. *See* doc. 1200 at PageID 4783-85. For example, Deborah Olinger Clark was set to testify regarding witness intimidation during trial. Doc. 842 at 16. However, Defendant voluntarily withdrew her as a trial witness. *Id.* at 43. Therefore, to the extent Defendant was aware of the witness intimidation claims that he now seeks to present to this Court on collateral review, those claims are waived for his failure to raise them when he was previously given the opportunity to do so. *Cf. United States v. Haque*, 315 F. App'x 510, 517 (6th Cir. 2009).

In his § 2255 Motion, Defendant appears to argue, as cause for his procedural default, that these witnesses were too intimidated to testify at the October 2002 evidentiary hearing, or at trial, but have now come forward with the passage of time. *See* doc. 1187-3 at PageID 4596. For purposes of deciding this § 2255 Motion, the Court will assume, *arguendo*, that Defendant has shown sufficient cause and prejudice to excuse his procedural default, and will thus address Ground Two on the merits.

### 2. Defendant Has Not Demonstrated That He Was Prejudiced by the Alleged Governmental Misconduct

Even assuming, *arguendo*, that Defendant's claims are not procedurally barred, Defendant is not entitled to *habeas* relief. As a preliminary matter, the seven witness statements in question

do not qualify as affidavits or declarations. An affidavit is required to be sworn to by the affiant in front of an "officer authorized to administer oaths." *See Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 475 (6th Cir. 2002). Additionally, under 28 U.S.C. § 1746, "an unsworn declaration under penalty of perjury" can be used in place of an affidavit in federal court. *See id.* Although Defendant's witness statements contain a notary signature, they are missing the necessary provision that the statements were each made under oath or penalty of perjury. *See* doc. 1187-6.

Nonetheless, even if the attached documents were proper affidavits or declarations, Defendant's Governmental misconduct claim still fails. When the Government substantially interferes with a criminal Defendant's right to present witnesses to establish a defense, the Defendant is denied a fair trial in violation of the Due Process Clause. *See United States v. Foster*, 128 F.3d 949, 953 (6th Cir. 1997). Governmental misconduct claims are subject to harmless error review, however. *See id.* Thus, a court may only dismiss an indictment due to Governmental misconduct when Defendant shows that he or she was "actually prejudiced" by that misconduct, *i.e.,* it affected the outcome of the trial. *United States v. Streebing*, 987 F.2d 368, 371-72 (6th Cir. 1993); *see also United States v. Stuart*, 507 F.3d 391, 398-99 (6th Cir. 2007).

Here, Defendant has failed to make such a showing of prejudice with respect to the statements of six of the potential witnesses: Diana Dixon; John Messler; Douglas Wells; Timothy Barnett; Andrea Yost and Deborah (Olinger) Clark.[9] These individuals merely state that they were

---

[9]The Court notes that Defendant also attached statements from Dennis Olinger and Bobby Wells (again, not proper declarations or affidavits) to his Supplemental Brief. Doc. 1235 at PageID 4978-80. Even accepting these statements as true, they do not demonstrate how Defendant was prejudiced by the alleged Governmental misconduct. *See id.* Additionally, in another supplemental motion, Defendant attached a letter from Bruce Young, who claims the Government forced him to plead guilty to conspiracy and a firearm specification, even though he did not commit those offenses. Doc. 1241. Young does not claim that he was going to testify for Defendant in his letter. *See id.* Therefore, this statement does not show prejudice either.

going to testify for Defendant until FBI agents threatened to indict them on various criminal offenses if they did so.[10]   Doc. 1187-6 at PageID 4670, 4672, 4674, 4676, 4678, 4680-81.  Thus, without these six witnesses' purported testimony, Defendant has failed to establish that the outcome of his trial would have been different.

The last of the seven individuals in question, Jimmy Smith, did provide his expected testimony.  Smith claims that, had he been permitted to do so, he would have testified that Jason Vitale (a prosecution witness) told him that he (Vitale) was offered money to tell the Government that cocaine found in a van belonged to Defendant and Co-Defendant Danny Nixon.  Doc. 1187-6 at PageID 4668.  There is no reasonable probability that the result of Defendant's trial would have been different had Smith so testified.  Vitale testified, and on cross-examination, he denied making such a statement to Smith.  Doc. 858 at 121-22.  The jury was thus alerted to the fact that Vitale may have previously made an inconsistent statement and, at most, Smith's testimony could have further undermined Vitale's testimony.  The Court finds that this would not have affected the outcome of the trial and, therefore, Defendant was not prejudiced by Smith's failure to testify on his behalf.  *Cf. Stuart*, 507 F.3d at 399.

In sum, Defendant has failed to show that he was prejudiced by the alleged Governmental misconduct.  Ground Two should therefore be dismissed.

        **D.**       **Defendant Is Not Entitled to an Evidentiary Hearing**

Defendant has requested an evidentiary hearing.  However, a § 2255 movant is not entitled to an evidentiary hearing in cases such as this, where there is no factual dispute and the record

---

[10]In Deborah Clark's case, she claims Quinn threatened to revoke her 5-year sentence, and impose a 10-year sentence instead, if she testified for Defendant.  Doc. 1187-6 at PageID 4680-81.

conclusively shows that the movant is not entitled to relief. *See Ross v. United States*, 339 F.3d 483, 490 (6th Cir. 2003). Therefore, the Court should not hold an evidentiary hearing on Defendant's claims.

### III. RECOMMENDATION

Based on the foregoing analysis, it is **RECOMMENDED** that Defendant's § 2255 Motion to Vacate Sentence (doc. 1187) be **DENIED WITH PREJUDICE**. It is also **RECOMMENDED** that Defendant's request for an evidentiary hearing be **DENIED**.

Because reasonable jurists would not disagree with this conclusion, Defendant should be **DENIED** any requested certificate of appealability.

May 18, 2012                                                          s/ **Michael J. Newman**
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(B)(C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).